ANDREW THOMAS SINCLAIR (SB# 72681)
CÈSAR J. DEL PERAL (SB# 232140)
Sinclair Law Office
300 Frank H. Ogawa Plaza
Rotunda Building, Suite 160
Oakland, CA 94612
Tel: (510) 465-5300
Fax: (510) 465-5356

KATHLEEN V. FISHER (SB# 70838)
ARNE D. WAGNER (SB# 78464)
MAYA J. SINCLAIR (SB# 209081)
SEUNG LEE (SB# 224273)
Calvo & Clark LLP
One Lombard Street, Second Floor
San Francisco, CA 94111
Tel: (415) 374-8370
Fax: (415) 374-8373

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Karen Moe Humphreys,

Plaintiff,

v.

Regents of the University of California, University of California, Berkeley, Department of Intercollegiate Athletics and Recreational Sports, Steve Gladstone, in his individual and official capacity, and Mark Stephens, in his individual and official capacity,

Defendants.

No. C 04 3808 SI (EDL)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SANCTION DEFENDANTS AND THEIR COUNSEL FOR ABUSING THE PROTECTIVE ORDER AND VEXATIOUSLY MULTIPLYING LITIGATION**

Judge: Honorable Elizabeth D. Laporte
Date: August 22, 2006
Time: 9:00 a.m.
Courtroom: Courtroom E, 15th floor

Plaintiff Karen Moe Humphreys respectfully submits this memorandum of points and authorities in support of her motion to sanction Defendants for abusing the protective order and vexatiously multiplying litigation.

## INTRODUCTION

After misusing the protective order to conceal information and impose needless burdens on the Court and Ms. Humphreys, Defendants then violated each of Judge Illston's Orders trying to curb their abuse.[1] There are no legitimate privacy rights at stake; to this day, Defendants have refused to identify ***any*** particularized harm that might result from disclosure of any of the documents at issue, in contravention of Ninth Circuit law, the terms of the protective order itself, and two Court Orders.

The protective order obligates a party marking any document confidential to first make a good faith determination. Defendants, however, indiscriminately designated thousands of pages of documents, many of which were publicly available, such as newspaper articles and web pages, and then refused to meet and confer about their designations. After Judge Illston ordered them to meet and confer, Defendants still refused to make a particularized showing for ***any*** document they had designated. Accordingly, Judge Illston vacated the protective order, but gave Defendants 30 days to file a motion to preserve the confidentiality of any documents for which they could make a particularized showing of harm, as required by the Ninth Circuit.

On the thirtieth day, Defendants moved to seal documents they had not even reviewed, regurgitating arguments that Judge Illston already had rejected without submitting any new evidence. They have since withdrawn some of their spurious motion, but are still seeking to seal more than 1,000 pages of documents, many of which they produced without a protective order in another case, and all of which Judge Illston already has held are not confidential.

---

[1] The underlying facts surrounding Defendants' abuse of the protective order are discussed in greater detail in Ms. Humphreys' Opposition to Defendants' Motion to Maintain Confidentiality Designations and in her two motions to vacate the protective order (Docket Nos. 419, 91 & 298), which are incorporated by reference herein.

Defendants' abuse of the judicial process has forced Ms. Humphreys to expend tremendous time and resources trying to confer with them about their improper designations and filing several motions related to the protective order. And, for no good reason, their behavior has forced her and the Court to comply with the expensive and burdensome procedures required by the protective order itself. In light of this misconduct, sanctions under Federal Rule 37(b), 28 U.S.C. § 1927, and the inherent powers of this Court are more than justified.

## BACKGROUND

### A. Defendants Overdesignate Tens of Thousands of Pages of Documents

On September 16, 2005, the parties stipulated to a protective order that allowed a party to designate materials as "confidential" if that party had a "good faith" belief that the materials contained legally confidential material. (Docket Nos. 48, 62 at ¶ 2 (emphasis added)). Thereafter, Defendants designated the overwhelming majority of their production as "confidential" without bothering to evaluate whether the individual documents actually required protection. (Docket No. 370 at 2 (May 23, 2006 Order Granting Plaintiff's Motion to Vacate Protective Order); 420 at Exs. 12, 13 (Declaration of Maya J. Sinclair in support of Plaintiff's Opposition to Defendants' Motion to Maintain Confidentiality Designations)). Many of these documents were web pages, newspapers articles and other obviously public materials. (Docket No. 92 at ¶¶ 5-9 (Declaration of Andrew Thomas Sinclair in support of Motion to Vacate Protective Order)). They also included documents related to the Sawyers race-gender investigation and employment contracts of University officials, both of which are required to be disclosed under California law. (Docket Nos. 419, 91 & 298).

When Ms. Humphreys tried to meet and confer with Defendants, they refused. (Docket Nos. 91 at 2, 298 at Exs. 2, 3). As a result, Ms. Humphreys was forced to file a motion to vacate the protective order.

### B. The First Motion to Vacate the Protective Order

On April 3, 2006, Judge Illston found "that defendants appear to have improperly designated a large number of documents as confidential." (Docket No. 166 (April 3, 2006 Order Denying Plaintiff's Motion to Vacate Amended Stipulated Protective Order)). However, she

denied the motion without prejudice, ordered Defendants to meet and confer about their designations, and warned them to promptly correct their overdesignations or face sanctions. (*Id.*)

**C. Defendants' Defiance of Judge Illston's April 3, 2006 Order**

Following Judge Illston's order, Defendants delayed the meet-and-confer process for two weeks. When they finally met and conferred, Defendants took the position that Judge Illston had required them only to meet and confer about illustrative documents identified in Ms. Humphreys' motion to vacate. (Docket Nos. 323 at 3 (Memorandum in Opposition to Plaintiff's Motion to Vacate Amended Stipulated Protective Order), 370 at 2). During the meet and confer they refused to un-designate any documents that did not come from a public source. (Docket Nos. 91, 298.) Many of their arguments were frivolous under Ninth Circuit law and even under the state laws they invoked.

**D. Judge Illston Vacates the Protective Order**

As a result of Defendants' conduct, Ms. Humphreys was forced to bring another motion to vacate the protective order. On May 23, 2006, Judge Illston granted the motion and rejected all of Defendants' arguments. (Docket No. 370.) She found that "[f]or the vast majority of the documents they have designated as confidential, Defendants have provided no justification whatsoever to defend their designations." (*Id.* at 2.) She also held that the public employment contracts and severance agreements at issue were not confidential. (*Id.* at 3.) And she found that Defendants had failed to make any particularized showing of any possible harm with regard to the investigative materials at issue. (*Id* at 2.) However, Judge Illston gave Defendants 30 days to comply with the Ninth Circuit's rule requiring a particularized showing of concrete harm for any document they still sought to seal. (*Id.* at 4.)

**E. Defendants' Continued Disobedience of Judge Illston's Rulings**

On the last day to file, Defendants filed a motion to maintain the confidentiality of certain documents. They did not meet and confer with Ms. Humphreys before doing so, as required by Judge Illston's Order. (Docket No. 370.) As Defendants later conceded, they designated a number of documents as "confidential" without even reviewing them – although their lead

counsel Gary Lafayette signed a declaration under oath stating that he had "personal knowledge" that the documents were "confidential," as required by this Court's Standing Order. (Docket Nos. 402 ¶¶ 2-6 (Declaration of Gary Lafayette in Support of Defendants' Motion to Maintain Confidentiality Designations), 412 ¶ 18 (Amended Declaration of Gary Lafayette in Support of Defendants' Motion to Maintain Confidentiality Designations) & 420 at Exs. K, L; *see also* Standing Order on Confidential and Sealed Documents, Laporte, J).[2]

Plaintiff warned Defendants that she would seek sanctions unless they immediately withdrew their motion, but Defendants declined to do so. (Docket No. 420 at Ex. M, p. 6). On July 10, Defendants submitted an amended motion, finally un-designating the employment contracts (seven weeks after Judge Illston had held that they were not confidential), but still seeking to seal broad categories of investigative materials. (Docket No. 411 (Amended Motion to File Documents under Seal in Conjunction with Defendants' Motion to Maintain Confidentiality Designations)). Many of these documents had already been produced without a protective order in the *Sawyers* case.[3] And, in her Order Vacating the Protective Order, Judge Illston had already rejected Defendants' arguments that these documents are "confidential." (Docket No. 370 at 3). Defendants' June 21 and July 10 motions did not present any new facts or law to support their position. (Docket Nos. 397 (Motion to Maintain Confidentiality Designations), 411).

---

[2] Before the 30-day window expired, Defendants refused to permit Ms. Humphreys to publicly file six exhibits to her Discovery Conference Statement. (Docket No. 420 at Ex. D). Judge Illston had already found that several of the documents at issue were not confidential. And the remaining materials were related to the so-called "Sawyers investigation" – about which documents were already available on the Alameda County Superior Court website. (Docket No. 383 (Administrative Motion to File Exhibits 2, 9, 10, 21, 24 and 25 to the Declaration of Kathleen V. Fisher under Seal)). Then, a month later, after Defendants finally got around to reviewing the documents, they belatedly withdrew the confidentiality designations of a number of the very exhibits Defendants had prevented Plaintiff from filing.

[3] Defendants' counsel represented to the Court that there was a protective order in *Sawyers v. Regents of University of California*, but there is no evidence to support this. (Docket No. 420 at Ex. E).

**F. The Costs Imposed by Defendants' Abuse of the Protective Order**

As Judge Illston has held, "[i]mproperly designating documents as confidential places an enormous burden on both the parties and, through the overuse of sealed filings, on the Court." (Docket No. 166). Defendants have now conceded that the vast majority of over 20,000 pages of documents that they originally sought to seal are not confidential. They have also conceded that a substantial portion of the documents that they originally attached to their June 21 motion to maintain confidentiality are not confidential. (Docket No. 411).

Defendants' repeated abuses of the protective order hamstrung Ms. Humphreys in her efforts to brief motions and prepare for trial. Ms. Humphreys could not show potential third-party witnesses many important documents that Defendants have since conceded are not "confidential." She was forced to file under seal many documents that Defendants now admit are not confidential. For example, three of the nine administrative motions to seal that Plaintiff was forced to file relate to the employment agreements that Defendants now concede are not confidential. (Docket Nos. 94, 159 & 383).

Plaintiff's counsel has spent numerous hours drafting briefs about the protective order, trying to meet and confer, writing letters, and preparing motions to seal documents. All told, by abusing the protective order, Defendants have deliberately and needlessly forced Plaintiff to incur tens of thousands of dollars in fees, for which Defendants should be made responsible.

**ARGUMENT**

The Court may sanction Defendants for violating the protective order and Judge Illston's April 3 and May 23 Orders pursuant to FRCP 37(b), which gives the Court broad powers to punish violation of discovery orders.[4] *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d

---

[4] "If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just . . . . [T]he court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b).

770, 784 (9th Cir. 1983) ("This failure to obey the protective discovery order exposed counsel and [the party] to liability under Rule 37(b)(2) for the resulting costs and attorney's fees.") (emphasis in original). Under Rule 37, no finding of bad faith is required; the Court need only determine that the protective order and Judge Illston's orders have been violated. *See Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994). The Court may also sanction Defendants' counsel's bad faith conduct pursuant to 28 U.S.C. § 1927, which empowers courts to sanction an attorney who unreasonably multiplies the litigation in bad faith.[5] *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1107 (9th Cir. 2002). The Court also has the inherent power to sanction Defendants for abusing the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-47 (1991) (court may use its inherent powers to punish litigant who has "engaged in bad faith or willful disobedience of a court's order"); *Gomez v. Vernon*, 255 F.3d 1118, 1133-34 (9th Cir. 2001) ("A court has the inherent power to sanction a party or its lawyers ... for 'willful[ ] abuse [of the] judicial processes.'") (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)) (brackets in original).

## I. DEFENDANTS' PATTERN OF DELIBERATE MISCONDUCT

The protective order provided that a party could designate information or materials as "confidential" if that party "in good faith believes that such information or material contains Confidential Information." (Docket No. 62 at ¶ 2 (emphasis added)). After Judge Illston issued the protective order, Defendants immediately violated its good faith requirement by designating thousands of pages of documents, many of which were publicly available (such as newspaper articles and web pages) or had been produced without a protective order in the *Sawyers* case. (Docket No. 92 at ¶¶ 6-8).[6] Under established Ninth Circuit law, any party seeking to prevent

---

[5] "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

[6] As examples, Defendants tried to seal, *and are still trying to seal*, investigative notes and reports related to the Sawyers race-gender investigation that were produced in the *Sawyers* case without a protective order and that are currently available to the public on the Alameda Court

public disclosure of judicial materials must make *a particularized showing of actual harm* for each document it seeks to conceal. *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). Yet Defendants went so far as to designate thousands of documents they had not even bothered to read, thus shifting to the Court and Ms. Humphreys a burden that belonged to Defendants. For example, as recognized by Judge Illston, "rather than individually reviewing the 18,162 pages of emails they produced for confidential information, defendants marked every one as confidential, effectively shifting the costs of assessing the confidentiality of those documents to plaintiff." (Docket No. 370 at 2.)

The effect of these overdesignations – as Defendants intended – was to impede Ms. Humphreys and run up her costs (not to mention imposing heavy burdens on the Court). This violation of the protective order, by itself, warrants sanctions under Rule 37(b). *THK America, Inc. v. NSK Co. Ltd.*, 157 F.R.D. 637, 646 (N.D. Ill. 1993) ("Clearly, ***every*** public document designated as 'Attorney's Eyes Only' constitutes a flagrant violation of the Protective Order.") (emphasis in original); *Falstaff Brewing Corp.*, 702 F.2d at 784; *Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oregon Ltd. P'ship*, 76 F.3d 1003 (9th Cir. 2003) (party sanctioned for trying to seal public document).

Instead of curing their initial overdesignations, Defendants embarked on a course of further violations of Court Orders designed to saddle Ms. Humphreys with additional needless delay and expense. Defendants refused to meet and confer about their designations, despite a clear duty to do so under the protective order. This separate violation of the protective order forced Ms. Humphreys to turn to Judge Illston, who ordered Defendants to meet and confer "regarding the documents that plaintiff believes have been improperly designated." (Docket No.

---

website. (Lafayette Amend. Dec. Ex. B-1 at DEF 2138-2148, 4780-4791, 4793-4800 (student athlete letters); *id.* at DEF 2158-2165 (February 4, 2003 Report); *id.* at DEF 2167-2175 (April 2, 2003 Report); *id.* at DEF 4230-4448 (investigative notes); Docket No. 420 at ¶¶ 2-3, Exs. A, B). The University has twice asked the Alameda Superior Court to cloak a "Draft Summary" of one of these reports, arguing that it is privileged material that was inadvertently produced in the *Sawyers* case. The Alameda Superior Court has twice rejected the University's arguments.

166.) Yet, Defendants disobeyed this Order by refusing to meet and confer about any documents other than those Ms. Humphreys had actually attached to her motion to vacate as *examples* of Defendants' overdesignations (Docket No. 298 at Exs. 4, 6, 9-12), and audaciously claimed that Judge Illston's Order somehow justified their refusal to un-designate non-confidential documents – arguments Judge Illston found to be "not well taken." (Docket Nos. 370 at 2, fn. 1; 323 at 1). Repeated violations of discovery orders, such as these, demand severe sanctions under Rule 37(b). *Falstaff Brewing Corp.*, 702 F.2d at 784; *Payne v. Exxon Corp.*, 121 F.3d 503, 510 (9th Cir. 1997) (dismissing claim under Rule 37(b) for repeated violations of discovery order).

During this time period, Defendants still refused to provide justifications for their designations as required by the protective order and Ninth Circuit law. Thus, when Ms. Humphreys was forced to bring yet another motion to vacate the protective order, which was granted, Judge Illston found: "For the vast majority of the documents they have designated as confidential, defendants have provided no justification whatsoever to defend their designations." (Docket No. 370 at 2.) When Defendants did provide justifications, they were utterly frivolous. For example, Defendants repeatedly tried to invoke state law as a basis to conceal public employment contracts, despite the fact that (1) Judge Illston had held that state law was inapplicable and (2), as Ms. Humphreys repeatedly pointed out, and Judge Illston held, California law expressly required the disclosure of public employment contracts. (*See* Docket Nos. 82 at 2:11-19 (February 13, 2006 Order Granting Plaintiff's Motion to Compel), 370 at 3 (citing Cal. Gov. Code §6254.8)).

After repeatedly violating the protective order and Judge Illston's April 3 Order, Defendants then violated Judge Illston's May 23 Order. In that Order, Judge Illston stayed her ruling vacating the protective order for 30 days to give Defendants one final opportunity to identify specific documents that actually met the Ninth Circuit's requirements, after meeting and conferring. However, Defendants filed a motion to maintain the confidentiality of documents without meeting and conferring, and sought to maintain the confidentiality of documents they had not even reviewed. (Docket Nos. 402 ¶¶ 2-6, 420 at Exs. K & L). Not only did this conduct violate the May 23 Order, it also violated the protective order and this Court's Standing Order,

both of which require a party to make a good-faith determination that documents actually warrant protection before seeking to seal them. (Standing Order, J. Laporte; Docket No. 62.)

In their motion to maintain confidentiality, Defendants sought to use this Court to end-run Judge Illston's prior holdings. For example, although Judge Illston had held that the public employment contracts could not be shielded, Defendants *still* included 24 of them with their original motion. (Docket No. 402). Similarly, although Judge Illston had held that Defendants must make a particularized showing of actual harm on a document-by-document basis, Defendants filed motions with this Court seeking to seal *categories* of documents and failing to identify *any* harm whatsoever. Further, although Judge Illston specifically found that Defendants had failed to justify their designations of the investigative reports, Defendants asked this Court to maintain the confidentiality of those documents without presenting new evidence or argument.

The Ninth Circuit has determined that a party's attempt to re-litigate the issues settled by a court's order is a proper ground for imposing sanctions. *Aloe Vera of Am., Inc. v. United States*, 376 F.3d 960, 965 (9th Cir. 2004) (citations and quotation marks omitted) (awarding sanctions under inherent powers for party's attempt to re-litigate issues related to protective order). Defendants' total disregard for Judge Illston's Order demands the imposition of sanctions in an amount at least sufficient to cover Ms. Humphreys' attorney's fees. Fed. R. Civ. P. 37(b); *Falstaff Brewing Corp.*, 702 F.2d at 784; *Aloe Vera of Am., Inc.*, 376 F.3d at 965.

Moreover, Defendants' pattern of misconduct was obviously in bad faith. To date, despite multiple Court Orders, Defendants have failed to submit ***any evidence*** supporting their designation of even a single document as required by Ninth Circuit law. It is apparent that they are motivated not by any genuine concern about confidentiality, but rather by a desire to impose needless costs on Ms. Humphreys, while hiding information from her and the public. Under these circumstances, Defendants and their counsel are liable under Rule 37(b). Further, Defendants' counsel should be sanctioned under section 1927 for vexatiously multiplying litigation. *See In re Peoro*, 793 F.2d 1048 (9th Cir. 1986) (sanctions under 1927 were warranted by frivolous attempt to relitigate issues court had decided); *see also Stanley v. Woodford*, 449 F.3d 1060, 1061 (9th Cir. 2006) (sanctioning attorney under 1927 for repeatedly violating order).

Finally, both Defendants and their counsel are also subject to sanctions under the Court's inherent powers for violating every order that relates to the protective order, designating documents without reading them, failing to meet and confer, and attempting to re-litigate issues settled by Judge Illston. *Aloe Vera of Am., Inc.*, 376 F.3d at 965; *Chambers*, 501 U.S. at 46-47.

## II. DEFENDANTS HAVE DELIBERATELY IMPOSED ONEROUS BURDENS ON PLAINTIFF AND COURT

Judge Illston recognized that "[i]mproperly designating documents as confidential places an enormous burden on both the parties and, through the overuse of sealed filings, on the Court." (Docket No. 166). Indeed, the burdens imposed by Defendants' misconduct have been two-fold. First, their misconduct has frustrated Plaintiff's ability to investigate the merits of the case by prohibiting her from showing designated documents to potential witnesses. Of course, this was nothing more than a sophisticated way to hide documents. *See THK America, Inc. v. NSK, Ltd.*, 917 F. Supp. 563, 574 (N.D. Ill. 1996). Second, their pattern of misconduct forced Plaintiff to incur tens of thousands of dollars of expenses, and diverted her counsel's time from case development and trial preparation. (Fisher Dec. ¶ 5).

Defendants had no legitimate reason for imposing these burdens. From among the tens of thousands of pages of documents that Defendants originally designated as confidential, they have still not managed to identify any genuinely sensitive information that warrants protection. Accordingly, Plaintiff asks that Defendants and their counsel be required to reimburse Plaintiff and the Court for the tremendous waste and delay that their misconduct has caused.

## CONCLUSION

Based on the foregoing, Ms. Humphreys respectfully requests that the Court assess monetary sanctions against Defendants and their counsel.

DATED: July 18, 2006

Sinclair Law Offices
Calvo & Clark, LLP

By: [signature]

Kathleen V. Fisher