IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN MOE HUMPHREYS, | No. C-04-03808 SI (EDL) |
| Plaintiff, | **ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR CONTINUED ENFORCEMENT OF COURT'S JUNE 15, 2006 ORDER RE: SERVER PATHS** |
| v. | |
| REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al., | |
| Defendants. | |

On August 22, 2006, Plaintiff filed a Motion for Continued Enforcement of the Court's June 15, 2006 Order regarding Server Paths. The matter was fully briefed and the Court held a hearing on October 10, 2006. For the reasons stated at the hearing, the Court issues the following Order.

The Court's June 15, 2006 Order stated, *inter alia*, that:

> Plaintiff seeks all documents from the following University server paths: s/complaint resolution/cases/ICA; s/complaint resolution/ICA and s:\Complaint Resolution\Cases\Athletics\ICA action plan drt 4-14.doc. Plaintiff's entitlement to these documents depends at least in part on resolution of the waiver issue, which will be decided after further briefing. However, as written, the request for these documents is overbroad. In the meantime, Defendants shall preserve the contents of those server paths. Plaintiff shall provide an explanation to Defendants as to where they obtained these particular server paths. Defense counsel shall find out how those server paths can be searched, for example, whether there is an index for the server paths or whether those paths can be searched using search terms, and inform Plaintiff.

June 15, 2006 Order at 2:18-27. In the process of complying with this Order, it came to light that the data from the server paths was burned onto a CD-ROM in 2003 after the close of the Sawyers investigation and that the server itself was decommissioned, i.e., securely erased, in November 2003. The contents of the decommissioned server were not transferred to the new server system. See Jocson Decl. ¶¶ 4, 7, 9. Mr. Jocson, a data analyst for the University who actually burned the contents of the server onto the CD-ROM, believes "that no data from [the servers or backup tapes]

could be restored." Jocson Decl. ¶ 9.

Even though the CD-ROM was created in 2003, Defendants did not notify Plaintiff of its existence until after the Court's June 15, 2006 Order. The CD-ROM, however, was known to the University, and was stored in the general counsel's office soon after it was made. See Oldham Decl. ¶ 6 ("Once this data had been burned onto a CD-ROM, it was placed with the other files from the Sawyers investigation in a box, which I then personally delivered to the University of California, Berkeley's office of the campus counsel."). The CD-ROM contains documents responsive to Plaintiff's discovery requests.

Specifically, the CD-ROM contains an e-mail dated February 2003 from Nancy Chu, an investigator for the University, regarding the draft summary of the investigation in the Sawyers matter. The e-mail reflects, *inter alia*, the investigators' view that: "there are (egregiously) inappropriate practices, climate issues" that, if not addressed, could leave the University "vulnerable to future lawsuit." Fisher Decl. in Supp. of Pl.'s Mot. for Continued Enforcement of Order re: Discovery into Defendants' Business Justification (docket number 482) Ex. 18 at DEF 005433. The e-mail also says that one of the issues in the investigation was "subtle and not-so-subtle race and gender hostile environment," and that Ms. Chu "recommend[s] a separate section in the document that addresses issues that the AD should be held accountable for." Id. at DEF 005434. This relevant document was only produced after the Court's Order of June 15, 2006, despite Judge Illston's April 3, 2006 Order that:

> According to plaintiff, Nancy Chu, Title IX officer, possesses eight letters from student athletes that are response to document requests. To this date, only four have been produced. Plaintiff seeks the other four letters and a confirmation that all of Chu's documents have been produced. The Court GRANTS this request and ORDERS production of the other four responsive letters and that defendants provide a confirmation that all of Chu's documents have been produced **on or before April 7, 2006**.

At the hearing, Defendants' counsel provided no satisfactory explanation as to why this document, which was plainly within the University's possession since 2003, was not produced to Plaintiff during discovery or at least in response to Judge Illston's Order. Even more troubling, however, is the characterization in Defendants' opposition brief of the document as "a single e-mail" from Ms. Chu that "does not address either gender issues or plaintiff," and therefore is purportedly

2

1  outside the scope of documents from the Sawyers investigation that were supposed to be produced.
2  Opp'n at 12:15-16.  Even a cursory reading of the entire e-mail (rather than just the first page that
3  Defendants cite) reveals that it references a "gender hostile environment" and therefore was well
4  within the scope of responsive documents.  Also, Defendants' reliance on counsel's declaration that
5  Ms. Chu told counsel in April 2006 that she did not have any more responsive documents does not
6  excuse Defendants' failure to search for her documents from other likely sources such as the general
7  counsel's office.  See Lafayette Decl. in Supp. of Defs.' Opp'n to Pl.'s Mot. (docket number 516)
8  Ex. Q (Velez Decl.) at ¶ 3.

9       Moreover, Plaintiff argues, and Defendants do not dispute, that at least one item from the
10  server is not on the archive CD-ROM - the Proposed Action Plan for Intercollegiate Athletics Draft:
11  May 20, 2003 ("Action Plan").  See Sinclair Decl. Ex. 1 (Action Plan).  The Action Plan has a server
12  path identifier in the footer, but it is not on the CD-ROM.  Id.  Plaintiff argues that this fact proves
13  that Defendants spoliated evidence.  See Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993)
14  (spoliation occurs when a party destroys relevant evidence in bad faith or after receiving simple
15  notice of potential relevance to the litigation.).  At the hearing, Defendants' counsel argued that
16  because all data that was on the server on the day that the CD-ROM was created was transferred to
17  the CD-ROM, the Action Plan must not have been on the server on that day.  While this is one
18  possible explanation, it is not the only one, and its validity depends on the accuracy of the
19  representation that all server data was successfully transferred.

20       The Court takes note of Defendants' counsel's earlier misstatement at the June 13, 2006
21  hearing on the issue of how many outstanding documents that Defendants were going to produce
22  from Mark Stephens on the issue of the so-called sweetheart deals.  At that hearing, counsel said that
23  he had "a document" from Mr. Stephens regarding work done by Mr. Stephens after he stopped
24  working at the University that needed to be produced, and that the document was the "only thing
25  I've got outstanding," and that he could produce it the next day.  See Fisher Decl. in Supp. of Pl.'s
26  Mot. for Continued Enforcement of Order Regarding Discovery into Defendants' Business
27  Justification (docket number 482) Ex. 10 at 51:14-17; 52:2-7.  After June 15, 2006, however,
28  Defendants produced five documents consisting of 65 pages from Mr. Stephens and an additional 63

3

1 pages from the Regents. Id. ¶ 14, Ex. 13, 14.  Counsel should come to court prepared to provide 2 accurate information after a diligent investigation, rather than make representations of fact that turn 3 out to be inaccurate.

4 For these reasons, the Court grants in part Plaintiff's motion for continued enforcement of 5 the June 15, 2006 Order as it relates to the server paths.  Defendants shall make Alfred Jocson and 6 Denise Oldham available for deposition regarding the creation, contents and chain of custody of the 7 archive CD, the decommissioning of the University's server from which the archive CD was created, 8 the server paths, the back-up tapes, the process used to transfer the information from the server to 9 the CD-ROM and the transfer of the CD-ROM and other Sawyers documents to the University's 10 general counsel's office.  Pursuant to Federal Rule of Civil Procedure 30(b)(6), Defendants shall 11 make available for deposition the person or persons most knowledgeable regarding alternative 12 sources for data that was securely erased from the decommissioned server regarding the Sawyers 13 investigation, including but not limited to any server at UCSF, or the back-up of any server at 14 UCSF, that contains e-mail correspondence, including attachments, regarding the Sawyers 15 investigation; any local or laptop computer that still contains relevant documents, correspondence or 16 data; any drive on a University server that still contains relevant information; the Athletic 17 Department server; and the Chancellor's Communications and Resource Center.  The parties shall 18 review the Court's Standing Order regarding Discovery relating to conduct during deposition.  The 19 question of which party will pay for these additional depositions will be resolved at a later date after 20 further briefing.

21 The parties shall select a neutral expert to take custody of the original archive CD (not a 22 copy).  Plaintiff shall identify to Defendants such a proposed neutral expert no later than November 23 3, 2006.  Defendants shall not unreasonably withhold consent to use of the expert.  Within ten days 24 of the parties' agreement on a neutral expert, Defendants shall provide the expert with the original 25 CD, a description of software necessary to run the CD and any and all information necessary to 26 access or make use of the CD.

27 As agreed to by the parties, Defendants should have already produced, no later than October 28 13, 2006, all documents, including but not limited to those e-mails or attachments contained on the

4

archive CD that Defendants listed as privileged on their revised privilege log filed June 19, 2006 and their Addendum to Privilege Log filed August 9, 2006, as to which the Court has found any privilege has been waived. In addition, with respect to Defendants' Second Addendum to Privilege Log compiled on August 15, 2006, the Court expects Defendants to immediately produce any documents listed as to which any privilege has been waived as reflected in the Court's September 11, 2006 Order (docket number 510).

**IT IS SO ORDERED.**

Dated: October 26, 2006

_Elizabeth D. Laporte_
ELIZABETH D. LAPORTE
United States Magistrate Judge

5